UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

S<small>AMUEL</small> E<small>UGENE</small> C<small>ALHOUN</small>,

          Petitioner,         Case No. 1:21-cv-789

v.                                Honorable Phillip J. Green

J<small>AMES</small> S<small>CHIEBNER</small>,

          Respondent.
_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2241.[1] Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen

---

[1] Although Petitioner brings his action under 28 U.S.C. § 2241, habeas corpus actions brought by "a person in custody pursuant to the judgment of a State court" are governed by 28 U.S.C. § 2254. *Id.* Section 2254 "'allows state prisoners to collaterally attack either the imposition *or* the execution of their sentences[.]'" *Bailey v. Wainwright*, 951 F.3d 343, 348 (6th Cir. 2020) (Stranch, J., dissenting) (quoting *Allen v. White*, 185 F. App'x 487, 490 (6th Cir. 2006)); *see also Rittenberry v. Morgan*, 468 F.3d 331, 336-37 (6th Cir. 2006). As a consequence, Petitioner's filing is subject to all of the requirements that apply to a petition filed under § 2254. Moreover, § 2241 petitions by state prisoners are subject to the rules governing § 2254 petitions. *See* Rule 1(b), Rules Governing § 2254 Cases.

out" petitions that lack merit on their face).  A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999).  After undertaking the review required by Rule 4, the Court will dismiss the petition for failure to raise a meritorious federal claim.

## Discussion

### I.     Factual allegations

Petitioner Samuel Eugene Calhoun is incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility in Muskegon Heights, Michigan.  Petitioner is serving a life sentence imposed by the Berrien County Circuit Court following Petitioner's July 27, 2001, jury conviction for first-degree criminal sexual conduct.  Petitioner impregnated his fourteen-year-old stepdaughter.  Petitioner appealed his convictions in the Michigan Court of Appeals and the Supreme Court, to no avail.  Petitioner then filed a motion for relief from judgment and, after the trial court denied that motion, he pursued appeals to the Michigan Court of Appeals and the Michigan Supreme Court, again to no avail.  Petitioner then filed a habeas corpus petition in this court.  By judgment entered September 25, 2014, the Court denied habeas relief on the merits.  Petitioner appealed, to no avail.  Petitioner has since thrice sought permission from the Sixth Circuit Court of Appeals to file a second or successive petition.  That court denied relief each time, most recently on December 18, 2020.

On May 29, 2020, Petitioner filed a habeas petition under 28 U.S.C. § 2241 in the United States District Court for the Eastern District of Michigan asking the court to release him because the risk of infection with COVID-19[2] rendered his continued incarceration unconstitutional. The petition was transferred to this Court and, on July 15, 2020, the Court dismissed the petition because Petitioner had failed to exhaust his state court remedies. *Calhoun v. Burt*, No. 1:20-cv-591 (W.D. Mich.) (J., ECF No. 8).

Petitioner then filed a petition for habeas corpus relief in the Michigan Court of Appeals. That court denied relief by order entered December 10, 2020. (Mich. Ct. App. Order, ECF No. 2-2, PageID.25) ("The complaint for habeas corpus is DENIED."). Apparently, believing that sufficed to exhaust his claims in the state courts, on December 30, 2020, Petitioner filed a new habeas petition under 28 U.S.C. § 2241. *Calhoun v. Steward*, No. 1:21-cv-35 (W.D. Mich.) (Pet., ECF No. 1.)

The new petition varied from Petitioner's May 29, 2020, petition in one significant respect. In mid-August, 2020, Petitioner contracted COVID-19. Thus, the risk that Petitioner argued rendered his continued incarceration unconstitutional

---

[2] In *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020), the Sixth Circuit described the COVID-19 problem as follows:

> The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications or death.

*Wilson*, 961 F.3d at 833.

3

was not the risk of infection, but the risk of reinfection.  The Court dismissed the second petition for the same reason as it dismissed the first:  Petitioner had failed to exhaust his state court remedies.  *Calhoun v. Steward*, No. 1:21-cv-35 (W.D. Mich.) (J., ECF No. 7).  Petitioner had not fairly presented his federal habeas issue to all three levels of the Michigan court system.  *Calhoun v. Steward*, No. 1:21-cv-35 (W.D. Mich.) (Am. Op., ECF No. 8).  Indeed, he had not ***fairly*** presented the issue to any level of the Michigan court system because his presentation to the Michigan Court of Appeals was procedurally inappropriate.  (*Id.*)

Since Petitioner filed his initial petition, the nature of the risk of COVID-19 infection has changed dramatically.  Effective vaccines have been developed and deployed and new variants of the virus have evolved.

After Petitioner's last petition was dismissed, he attempted once more to exhaust his state court remedies.  He filed a petition for writ of habeas corpus in the Muskegon County Circuit Court.  It appears his state court petition shifted focus to the presently rampant version of the COVID-19 virus, the Delta variant.  The court denied relief by order entered August 3, 2021.  (Muskegon Cnty. Cir. Ct. Order, ECF No. 2-1, PageID.22–23.)[3]  But Petitioner has not pursued his claim any further.  He

---

[3]The Muskegon County Circuit Court denied relief based on the conclusion that habeas relief under state law is available only where the prisoner was not "duly convicted." (Muskegon Cnty. Cir. Ct. Order, ECF No. 2-1, PageID.22) citing Mich. Comp. Laws § 600.4310(3).  This Court is bound by the state court's interpretation of state law.  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit repeatedly has recognized "'that a state court's

has not ever fairly presented his COVID-19 arguments in either the Michigan Court of Appeals or the Michigan Supreme Court.

The present petition alleges that the risk of infection arising from the COVID-19 Delta variant renders Petitioner's continued imprisonment a violation of Petitioner's Eighth Amendment rights. (Pet., ECF No. 1, PageID.1.) Petitioner seeks immediate release. (*Id.*, PageID.2.)

## II.     Exhaustion of State Court Remedies

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009);

---

interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). This Court suggested to Petitioner that a state habeas corpus petition would be one means of exhausting his COVID-19 claims. *Calhoun v. Burt*, No. 1:20-cv-591 (W.D. Mich.) (Op., ECF No. 6, PageID.12). The Court will not fault Petitioner for following that suggestion and, accordingly, considers the COVID-19 issue to be fairly presented to the Muskegon County Circuit Court.

*Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134, 138-39 (6th Cir. 1970).

Fair presentation has a substantive component and a procedural component. With regard to substance, fair presentation is achieved by presenting the asserted claims in a constitutional context through citation to the Constitution, federal decisions using constitutional analysis, or state decisions which employ constitutional analysis in a similar fact pattern. *Levine v. Torvik*, 986 F. 2d 1506, 1516 (6th Cir. 1993); *see also Picard*, 404 U.S. at 277–78. With regard to procedure, "[t]he fair presentation requirement is not satisfied when a claim is presented in a state court in a procedurally inappropriate manner that renders consideration of its merits unlikely." *Black v. Ashley*, No. 95-6184, 1996 WL 266421, at *1 (6th Cir. May 17, 1996) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1998) ("[W]here the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless 'there are special and important reasons therefor,' . . . does not, for the relevant purpose, constitute 'fair presentation.'")); *see also Long v. Sparkman*, No. 95-5827, 1996 WL 196263, at *2 (6th Cir. Apr. 22, 1996); *Fuller v. McAninch*, No. 95-4312, 1996 WL 469156, at *2 (6th Cir. Aug. 16, 1996).

Petitioner has not fairly presented his COVID-19 claims to all three levels of the state court system. Nonetheless, although relief cannot be granted absent exhaustion, 28 U.S.C. § 2254(b)(1), it can be denied, 28 U.S.C. § 2254(b)(3). For the

reasons set forth below, the petition is properly denied on the merits; therefore, the Court will look beyond Petitioner's failure to exhaust his state court remedies.

### III. Availability of § 2254 relief for unconstitutional conditions of confinement

Petitioner's request for relief is not a typical habeas claim. The Supreme Court has made clear that constitutional challenges to the fact or duration of confinement are the proper subject of a habeas corpus petition rather than a complaint under 42 U.S.C. § 1983. *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973). Constitutional challenges to the conditions of confinement, on the other hand, are proper subjects for relief under 42 U.S.C. § 1983. *Id.* The *Preiser* Court, however, did not foreclose the possibility that habeas relief might be available even for conditions of confinement claims:

> This is not to say that habeas corpus may not also be available to challenge such prison conditions. *See Johnson v. Avery*, 393 U.S. 483, (1969); *Wilwording v. Swenson, supra*, at 251 of 404 U.S. . . . When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal. *See* Note, Developments in the Law—Habeas Corpus, 83 Harv. L. Rev. 1038, 1084 (1970).[]

*Preiser*, 411 U.S. at 499 (footnote omitted). But, the Court has also never upheld a "conditions of confinement" habeas claim. Indeed, in *Muhammad v. Close*, 540 U.S. 749 (2004), the Court acknowledged that it had "never followed the speculation in *Preiser* . . . that such a prisoner subject to 'additional and unconstitutional restraints' might have a habeas claim independent of § 1983 . . . ." *Id.* at 751 n.1.

7

The Sixth Circuit has concluded that claims regarding conditions of confinement are properly brought under § 1983 and are not cognizable on habeas review. *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) ("'Petitioner in this case appears to be asserting the violation of a right secured by the federal Constitution or laws by state prison officials. Such a claim is properly brought pursuant to 42 U.S.C. § 1983.'"); *In re Owens*, 525 F. App'x 287, 290 (6th Cir. 2013) ("The criteria to which Owens refers involves the conditions of his confinement . . . . This is not the proper execution of sentence claim that may be pursued in a § 2254 petition."); *Hodges v. Bell*, 170 F. App'x 389, 392–93 (6th Cir. 2006) ("Hodges's complaints about the conditions of his confinement . . . are a proper subject for a § 1983 action, but fall outside of the cognizable core of habeas corpus relief."); *Young v. Martin*, 83 F. App'x 107, 109 (6th Cir. 2003) ("It is clear under current law that a prisoner complaining about the conditions of his confinement should bring suit under 42 U.S.C. § 1983.").

Petitioner's claims challenging the constitutionality of his custody due to risks posed by COVID-19 appear on their face to be claims regarding the conditions of his confinement. Such claims should be raised, typically, by a complaint for violation of 42 U.S.C. § 1983.

Nonetheless, Petitioner requests release from custody. That relief is available only upon habeas corpus review. "The Supreme Court has held that release from confinement—the remedy petitioner[] seek[s] here—is 'the heart of habeas corpus.'" *Wilson*, 961 F.3d at 838 (quoting *Preiser,* 411 U.S. at 498).[4] A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser*, 411 U.S. at 484 (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody).

In *Wilson*, the Sixth Circuit stated: "Our precedent supports the conclusion that where a petitioner claims that no set of conditions would be constitutionally sufficient the claim should be construed as challenging the fact or extent, rather than the conditions, of the confinement." *Wilson*, 961 F.3d at 838. Petitioner, like the petitioners in *Wilson*, contends there are no conditions of confinement sufficient to prevent irreparable injury at the facility where he is housed. Accordingly, the Court construes his claim as a proper claim for habeas relief.

Nonetheless, because Petitioner has chosen to pursue relief by way of a habeas petition, the available relief is circumscribed. *Wilson*, 961 F.3d at 837. Even if there might be conditions of confinement, short of release, that would mitigate the risk— and eliminate the conditions that Petitioner claims violate his rights—it is not within

---

[4] The *Wilson* petitioners were federal prison inmates who brought habeas claims under 28 U.S.C. § 2241 similar to those claims brought by Petitioner in his first COVID-related habeas petition.

9

this Court's habeas jurisdiction to grant such relief. *Id.* A claim seeking relief other than release is properly brought under 42 U.S.C. § 1983.

The Court notes that the claim raised by Petitioner now is not necessarily similar to the claim raised in his first COVID-related petition, his second COVID-related petition, or by the *Wilson* petitioners. Even if there were no conditions of confinement sufficient to prevent irreparable injury in the past, if those conditions do not continue today, or at least when Petitioner filed his petition, then release is no longer a proper remedy and a habeas corpus petition is no longer the proper path to relief.

## IV. Petitioner's Eighth Amendment claim

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*,

10

832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they

11

responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Moreover, because Petitioner has raised his Eighth Amendment claim by way of a habeas petition, Petitioner must make the additional showing that there are no conditions of confinement sufficient to prevent irreparable injury.

Petitioner suggests that the risk he faces from COVID-19, particularly the Delta variant, is dire. But the risk is not the same risk that Petitioner faced when he filed his first petition in May of 2020. The specific risk that Petitioner faces appears to be different because he has already been infected by the virus. Whether or not the risk of COVID-19 reinfection is sufficiently high or the resulting illness sufficiently dire to warrant release as a remedy is not readily apparent. The federal courts have addressed the issue frequently with regard to the prospect of compassionate release for federal prisoners. For example, on February 17, 2021, in *United States v. D-2 Eric Jerome Powell*, No. 2:12-cr-20052-2, 2021 WL 613233, (E.D. Mich. Feb. 17, 2021), the court reasoned:

> [T]he Court does not find Defendant's arguments persuasive because Defendant already contracted the COVID-19 virus and recovered quickly. *Id*. at 12420. Although Defendant claimed that he is now "suffering the consequences of being infected[,]" Defendant presented no medical records that show any lingering health consequences. *See id.* To the contrary, Defendant has exhibited no complications from COVID-19. ECF 850-1, PageID.12436; ECF 856-1, PageID.12771–801, 12829 (under seal).
>
> At any rate, the Court has extensively reviewed the existing scientific literature and finds that the scientific consensus does not support Defendant's COVID-19 concerns. *See Elias*, 984 F.3d at 521 (holding that a district court did not abuse its discretion when it relied on scientific journals to determine that a defendant did not have a heightened risk of complications from COVID-19). For example,

> research from the National Institutes of Health ("NIH") has explained that 95% of individuals who recover from COVID-19 have up to eight months immunity to the virus. *See Lasting Immunity Found After Recovery From COVID-19*, NIH, (Jan. 26, 2021), https://bit.ly/3rjf1OY, [https://perma.cc/ZC54-APZ7]. Likewise, other cases in the Eastern District of Michigan have reviewed the scientific literature and found that an inmate's extremely low risk of a COVID-19 reinfection is not an extraordinary and compelling reason warranting release under the First Step Act. *See United States v. Mungarro*, No. 07-20076, 2020 WL 6557972, at *3 (E.D. Mich. Nov. 9, 2020) (Cleland, J.); *United States v. Lawrence*, No. 17-20259, 2020 WL 5944463, at *2 (E.D. Mich. Oct. 7, 2020) (Roberts, J.) (collecting cases). The Court therefore does not find that Defendant's concerns about COVID-19 are extraordinary and compelling to warrant release.

*Powell*, at *3. Dozens of federal courts have wrestled with this issue. Their conclusions are not uniform. *See, e.g., United States v. Secchiaroli*, 17-CR-179-RJA, 2021 WL 614632, at *6 (W.D.N.Y. Feb. 17, 2021) (court granted compassionate release where "it is conceivable that he could be re-infected and experience a severe case of COVID-19."). But it appears that most courts have concluded that the risks from reinfection do not create extraordinary and compelling circumstances that warrant compassionate release. That does not dictate a result in Petitioner's case; it merely illustrates a potential difference between the circumstances that prompted consideration of habeas relief in *Wilson* and the circumstances present here.

Additionally, the general risk of infection that Petitioner faces has changed significantly over the sixteen months since he filed his first petition. That is aptly demonstrated by a report Petitioner attaches to support his petition.

13

Petitioner relies upon a report from the Marshall Project,[5] available at https://www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-coronavirus-in-prisons (visited Sept. 17, 2021). That report includes data collected by the Marshall Project and the Associated Press, but, as of June 25, 2021, the data is no longer updated. *Id*. The reported information regarding Michigan, however, was collected from the Michigan Department of Corrections. *See* https://data.world/associatedpress/marshall-project-covid-cases-in-prisons (visited Sept. 17, 2021) ("[The data] is collected on a weekly basis by Marshall Project and AP reporters who contact each prison agency directly and verify published figures with officials.").

The reported numbers from Michigan show that, as of the last reported data, there were three new COVID-19 cases across the approximately 40,000 prisoners in the MDOC. The updated numbers directly from the MDOC show that as of September 15, 2021, there were 28 active positive cases, most of which were housed at the Charles E. Egeler Reception and Guidance Center, where prisoners first come in to the MDOC system. See https://medium.com/@MichiganDOC/mdoc-takes-steps-to-prevent-spread-of-coronavirus-covid-19-250f43144337 (visited Sept. 17, 2021).[6]

---

[5] "The Marshall project is a nonpartisan, nonprofit news organization that seeks to create and sustain a sense of national urgency about the U.S. criminal justice system." https://www.themarshallproject.org/about?via=navright (visited Sept. 17, 2021).

[6] Although the page is hosted on Medium.com, the MDOC specifically links to this page from their website as the location where they will provide updates and information. *See* https://www.michigan.gov/corrections/ (last visited Sept. 17, 2021). The Court takes judicial notice of these facts under Rule 201 of the Federal Rules of Evidence. The accuracy of the source regarding this specific information "cannot

There were no positive cases at the Muskegon Correctional Facility where Petitioner is housed.  Thus, the report Petitioner relies upon to demonstrate risk in the Michigan prison system does not support his claim.  Indeed, to bolster his claim, Petitioner looks to numbers showing how the virus is spreading in the community outside the prison.  Comparing the two, Petitioner's risk is greater outside the Muskegon Correctional Facility walls than it is within.

In short, accepting as true Petitioner's allegations regarding the risk of COVID-19 infection, he has utterly failed to allege facts that support an inference that Respondent has been deliberately indifferent to a risk of harm to Petitioner.  He has also failed to allege facts that support an inference that, in light of the risk of harm he presently faces, there are no conditions of confinement sufficient to prevent irreparable injury.  Therefore, Petitioner has failed to present a meritorious claim for habeas corpus relief.  Accordingly, the Court will dismiss the petition.

---

reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also* Paul F. Rothstein, Federal Rules of Evidence 49 (3d ed. 2019) (citing *Matthews v. NFL Mgmt. Council*, 688 F.3d 1107 (9th Cir. 2012) (taking judicial notice of statistics on the NFL website that the plaintiff played 13 games in California over 19 years); *Victaulic Co. v. Tieman*, 499 F.3d 227, 236–37 (3d. Cir. 2007), as amended (Nov. 20, 2007) (finding error where a district court took judicial notice of facts stated in "a party's . . . marketing material" on an "unauthenticated" website because marketing materials often lack precise and candid information and the source was not authenticated)).  Moreover, "[t]he court may take judicial notice at any stage of the proceeding."  Fed. R. Evid. 201(d) (emphasis added).  Thus, the Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b).

## V.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*

The Court has concluded that Petitioner's application is properly denied for lack of merit. To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003). In applying this standard, the court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims. *Id.*

Applying this standard, this Court finds no basis for issuance of a certificate of appealability. The Court has already rejected Petitioner's claims of constitutional error under the standards set forth in the Antiterrorism and Effective Death Penalty Act. The Court finds that reasonable jurists could not conclude that this court's dismissal of Petitioner's claims was debatable or wrong, and therefore, the Court will deny Petitioner a certificate of appealability.

Moreover, for the same reasons the Court will deny a certificate of appealability, the Court also concludes that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter an order and judgment dismissing the petition for failure to exhaust state-court remedies and denying a certificate of appealability.


Dated:  October 12, 2021                           /s/ Phillip J. Green
                                                     PHILLIP J. GREEN
                                                     United States Magistrate Judge